LOUMAR DEVELOPMENT CO., Inc., a Corporation, Plaintiff-Respondent,

v.

Joseph A. REDEL and Emily G. Redel, Defendants-Appellants.

No. 49691.

Supreme Court of Missouri,

Division No. 1.

July 8, 1963.

Leland Jones, Gerhard J. Petzall, Guilfoil, Caruthers, Symington & Montrey, St. Louis, for appellants.

Hanlon & Busch, John F. Hanlon, John A. McCarty, Clayton, for respondent.

HOLMAN, Judge.

In this action plaintiff sought an adjudication to the effect that an easement

existed over a 50-foot strip of defendants' land for use as a right of way for a private roadway, and also sought to enjoin defendants from interfering with plaintiff's use thereof. A trial before the court resulted in a judgment for plaintiff and defendants have duly appealed therefrom. We have appellate jurisdiction for the reason that title to real estate is directly involved. Dalton v. Johnson, Mo.Sup., 320 S.W.2d 569.

The adjoining tracts of plaintiff and defendants are part of a 40-acre tract which was conveyed to George S. Johns and Minnie Johns, husband and wife, in 1912. Minnie died on January 5, 1940. Thereafter, Mr. Johns conveyed the tracts here involved and established (or at least attempted to establish) a right of way for a proposed road to run south from Robyn Road through the approximate center of said land. The lands owned by plaintiff and defendants consist of four tracts which will be referred to herein as Tracts I, II, III, and IV. The alleged easement involved in this case would provide access from Tract IV, which is owned by plaintiff, to Robyn Road. It purportedly was established over the east 25 feet of Tract III and the west 25 feet of Tracts I, II and IV. Tracts I and III front on Robyn Road and Tract II adjoins Tract I on the south, and the north boundary of Tract IV is the south boundary of Tract II.

The conveyances relating to the four tracts heretofore mentioned will be next described. On June 19, 1940, Johns conveyed Tract I to Beatrice M. Worthington. Following the description in the deed is the recital, "The west 25 feet of above property is subject to the right of way of a proposed road, 50 feet wide." On the 30th day of November, 1950, Tract I was conveyed to defendants. On October 15, 1940, Johns conveyed Tract III to George F. Heath and wife, and that deed contained the following recital: "The east 25 feet of above property is subject to the right of way of a proposed road, 50 feet wide." This tract was conveyed to defendants on November 30, 1954, and that deed contained the same recital in regard to the proposed road as the one contained in the deed from Johns to Heath. On July 19, 1943, the heirs of George Johns conveyed to Jay H. Gruner and wife the land which subsequently became Tracts II and IV (and other land), and that deed contained the following recital: "Subject to right of way for proposed road 50 feet wide, over part of parcel No. I, according to deed recorded October 28, 1940, in Book 1724, page 525." (The deed recorded in Book 1724, p. 525, is the one from Johns to Heath and the recital therein is hereinabove quoted.)

The land conveyed to Gruner was subsequently conveyed to one Hynes who, on the 30th day of June, 1953, conveyed the portion thereof which we refer to as Tract II to the defendants. There was no mention in the deed from Hynes to defendants of any easement for a roadway. On the 22nd day of November, 1960, Hynes conveyed certain lands to the plaintiff which included the land which we refer to herein as Tract IV.

One of the defendants, Joseph A. Redel, testified that when he bought Tract I there had been constructed thereon a house, a single-car garage, and a gravel driveway leading from Robyn Road to the garage; that he and his family moved into the house on this property about December 31, 1950; that in 1958, he built a carport on the west side of the garage, and in 1959 paved the driveway with asphalt; that when he bought Tract I, he noticed the proposed road on a survey he received of that tract; that when he bought Tract III, he noticed the wording in the deed regarding a proposed road; that when he purchased Tract II from Hynes, or shortly thereafter, he asked Hynes to join with him and Mrs. Redel in signing a paper which would have abolished the easement for the proposed road in question; that he had an agreement of that kind prepared and submitted the same to Hynes who, although he never refused to sign it, actually did not do so.

Exhibits in evidence disclose that the major part of defendants' driveway from Robyn Road to his garage is located on the west 25 feet of Tract I, which is a portion of the proposed right of way in question, and that a small part of the garage upon that tract (perhaps five feet) and the carport are located on the portion of the easement above mentioned.

Mrs. Dorothy Singer testified that she lived on Robyn Road near defendants' home; that her nephew had owned and occupied Tract I from 1945 to 1950, and that during that period he built the garage which is now located on said tract.

Louis Miller testified that he is president of the plaintiff corporation and that plaintiff purchased Tract IV on November 22, 1960; that two days later he called Mr. Redel and told him that the surveyors would start work in a short time in designating the location of the easement which this suit seeks to establish, and that Mr. Redel said, "This so-called easement which you are referring to—you would never get because I'll fight you in court for it"; that when the surveyors did attempt to stake out the easement Mr. Redel refused to let them come on his land. This suit was filed shortly thereafter. Mr. Miller testified further that there is another roadway which can be used to reach a part of plaintiff's land but it cannot be used to reach a portion of Tract IV because of a drainage draw with steep grades which it would have to cross.

■ Respondent has filed a motion to dismiss the appeal because of the failure of defendants' brief to comply with S.C.Rule 83.05, V.A.M.R. The most serious violation of the rule is the failure of the brief to "briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed." In an effort to avoid a dismissal, defendants have asked leave to amend their "Points Relied On" in a manner which would cause them to comply with Rule 83.05(e). We hereby authorize said amendment. The brief is subject to criticism in other respects, but we do not think the violations are serious enough to justify a dismissal of the appeal. The motion is accordingly overruled.

■ In a case of this nature we must determine the cause de novo, weigh the competent evidence, and reach our own conclusions based upon that evidence. Jackson v. Tibbling, Mo.Sup., 310 S.W.2d 909.

■■ The first contention of defendants is that no easement was in existence at the time this suit was filed because the deeds above described purported to create an easement for a *proposed* road—a particular road which was never constructed. In their brief defendants say that "Johns had a particular proposed road in mind, which road was prerequisite to the ripening of the easement and which, of course, never came into being. The right of way or easement was not to accommodate just any road; it was to accommodate one specific road. A road that had already been planned by the grantor. If the planned road was established, the right of way was available for it. The right of way was not otherwise to exist. * * * Thus, because the condition precedent, i. e., the particular proposed roadway which Johns had in mind and for which the easement was created, never came into being, the easement itself never came into being—it was void ab initio." We do not agree with that contention. Johns' intent must be ascertained from the various deeds by which he attempted to create the easement. There is nothing in those deeds to indicate that he had a particular road in mind. One definition of "proposed" is "intended." We think a reasonable construction of these deeds is that Johns intended to provide a right of way for a road which had not yet been constructed but which it was intended or proposed would be constructed at some future time.

We accordingly rule that the use of the word "proposed" in the sentence creating the easement did not restrict the easement to a specific road, or limit the time in which the road was required to be constructed.

▮▮ The next point briefed is that the alleged easement is void and unenforceable because the instruments creating same did not define the character, description and nature of the proposed road. In this instance we think the use of the words "right of way" and "road", together with the stated width of the way, was a sufficient description to establish an easement. The expression "right of way" is defined in Black's Law Dictionary, 4th Ed., as: "The right of passage or of way is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, or horseback, or in a vehicle, to drive beasts of burden or carts, through the estate of another." The meaning of the word "road" is well known. As used in the instant deed, it obviously means a thoroughfare for the use of vehicular and pedestrian travel. It is not essential to the validity of the easement that the type of road to be constructed be designated.

▮ It is true, as suggested by defendants, that the deeds do not state whether the road shall be a public or private road. In that connection, we note that plaintiff alleges in its petition that the easement is for a private road, and the court, in its judgment, so decreed. Since the servitude imposed by a private road is less burdensome upon defendants' estate than a public road, and since defendants have made no contention that the easement created a right of way for a public road, we think they are in no position to contend that the easement is invalid because the deeds did not clearly state whether the road should be public or private. However, we think it is apparent from the contents of the various deeds that Johns intended to grant an easement for a private road to serve all the lands adjoining the easement. In support of their contention defendants have cited Kansas City Power & Light Co. v. Riss, Mo.App., 319 S.W.2d 262, and Magnolia Petroleum Co. v. Thompson, 8th Cir., 106 F.2d 217. These cases involve such entirely different factual situations from the case at bar that they are of no assistance in our determination of the contention herein discussed.

▮ The next contention briefed is that there is no easement over Tract II. We will review the relevant facts. The eastern boundary of Tract III is 887 feet long. It adjoins all of the western boundary of Tracts I and II and at least a part of Tract IV. When Tract III was conveyed by Johns to Heath the deed contained the following reservation: "The east 25 feet of above property is subject to the right of way of a proposed road, 50 feet wide." The reservation of the easement over the entire 887 feet clearly indicates that Johns intended something more than to provide access from the remainder of his land (Tracts II and IV) to Robyn Road. That could have been accomplished by reserving an easement over the east 25 feet of the part of Tract III which adjoined Tract I (less than 300 feet). Since the above-quoted reservation provided for a road 50 feet wide, it appears clear to us that Johns intended thereby to grant an easement for the proposed road over the west 25 feet of his remaining land which adjoined Tract III. This view is fortified by the recital contained in the subsequent conveyance of said remaining land to Gruner, which deed contained a recital that it was "subject to right of way for proposed road 50 feet wide," according to the deed by which Johns deeded Tract III to Heath. As we have heretofore said, we are of the opinion that Johns intended to establish an easement for a 50-foot road to serve all the land adjoining it. It may be (a question we do not decide) that he intended that the road should also be for the use of property abutting the south terminus of the easement. We accordingly rule that the easement has been established over the west 25 feet of Tract II.

Defendants say that the deed whereby Johns conveyed Tract III to Heath could not have created an easement over the west 25 feet of Johns' remaining land because Johns owned the fee of that land. The same contention is made concerning the deed from Johns to Gruner conveying that land (Tracts II and IV). We agree, as stated in the cases cited by defendants, that ordinarily, for an easement to exist, there must be a dominant and servient estate, and they must not be lodged in the same person. See Marshall v. Callahan, 241 Mo.App. 336, 229 S.W.2d 730. However, that rule is not applicable here because neither Johns nor Gruner owned all the land to be served by this proposed road. In a sense the owners of these four tracts were each dominant and servient tenants. In that situation a valid easement could be and was created over the west 25 feet of the land later called Tracts II and IV.

Defendants also contend that even if the easement had been established over Tract II, such was released or abandoned by the failure of Hynes to reserve the easement in his deed conveying Tract II to them. In connection with our consideration of this contention it should be noted that defendants had both actual and constructive notice of the existence of the easement. It has been said that a "grantee of land takes title subject to duly recorded easements which have been granted by his predecessors in title. Generally, also, a person who purchases land with knowledge or with actual, constructive, or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement." 17A Am.Jur., Easements, § 152, p. 757. But defendants say that the fact that Hynes conveyed the land to them by warranty deed, and did not reserve the easement, is an affirmative act indicating an intention to extinguish the easement. Even if we assume the truth of that contention it is not decisive. Hynes did not have the power to extinguish the easement without obtaining the consent of the owners of all the land to be served by the proposed road. Insofar as that proposed road was concerned, Tract II was both a dominant and servient tenement and the easement over said tract would not be extinguished by the mere failure of Hynes to describe it in his deed to defendants. "The courts are not inclined to favor the forfeiture of easements. An easement is not ordinarily extinguished by the conveyance or division of the dominant tenement and a conveyance of the servient tenement to one with actual, constructive, or implied notice that it is burdened with an easement is subject to the servitude." 17A Am.Jur., Easements, § 159, p. 764. We rule this point against defendants.

In connection with the various contentions of defendants to the effect that no easement was created or continued to exist over the west 25 feet of Tract II, we think it is significant to note that after defendants had acquired that tract defendant Joseph A. Redel had an agreement prepared for the purpose of abolishing the proposed road and that he caused a description of Tract II to be included therein. Such would seem to be an admission against interest when considered in connection with defendants' present contentions.

The final contention of defendants is that the trial court erred in not sustaining their defense to the effect that the easement had been extinguished by reason of the adverse possession of defendants and their predecessors in title. "An easement may be lost by an occupation on the part of a person other than the owner of the easement adverse to the right claimed, in connection with nonuser by the owner of the easement. * * * [T]he possession must be actual, adverse, hostile, open, notorious, clear, unequivocal, and continuous for the statutory period." 28 C.J.S. Easements § 63, pp. 729, 730. In order for defendants to comply with the requirement that their possession was either "hostile" or "open and notorious," it should have been of such character

as would have been calculated to give notice to plaintiff (and those under whom it claims) that defendants were exercising exclusive dominion and control over this strip of land, under claim of title, adversely to any claim of plaintiff or anyone else. Franck Bros., Inc. v. Rose, Mo.Sup., 301 S.W.2d 806. The only evidence tending to support this defense is the proof that the driveway from Robyn Road to defendants' garage is located on the portion of Tract I reserved for the easement, and also that a small part of the garage is so located. The carport was also constructed on the land reserved for the easement, but there is no contention that that fact would support this defense because it was constructed in 1958 and therefore had not existed for the required statutory period of ten years.

We do not think the use of a part of the easement strip for a driveway would be an occupancy of such an adverse character as would extinguish the easement. This for the reason that such use was compatible with the right-of-way easement and would not have interfered with the reasonable enjoyment of the easement. However, a small portion of the garage on defendants' premises is located on the easement tract, and was so located for more than ten years prior to the date this suit was filed, i. e., February 11, 1961. Under the facts and circumstances of this case, we think the possession of the part of the easement strip upon which the garage was constructed fully complied with the requirements for obtaining title by adverse possession, and we therefore rule that the easement has been extinguished as to that portion of Tract I. See Anno. 25 A.L.R.2d, § 27, p. 1330.

The judgment is reversed and the cause remanded with directions to set aside the judgment heretofore entered, and to enter a new judgment in accordance with the views herein expressed.

All concur.